Shaun Setareh (SBN 200514)
  shaun@setarehlaw.com
Brian Louis (SBN 353058)
  brian@setarehlaw.com
SETAREH LAW GROUP
420 N. Camden Drive, Suite 100
Beverly Hills, California 90210
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiff
DAVID MARRON

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DAVID H. MARRON, on behalf of himself, all others similarly situated,<br><br>     *Plaintiff,*<br><br>vs.<br><br>HEALTHSOURCE GLOBAL STAFFING, INC., a California corporation; and DOES 1 through 50, inclusive,<br>     *Defendants.* | Case No.: 4:19-cv-01534-KAW<br><br>Assigned for All Purposes to the Hon. Kandis A. Westmore<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT**<br><br>Date:   June 19, 2025<br>Time:  1:30 p.m.<br><br>Action Filed: October 18, 2018 |

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at 1:30 p.m. on June 19, 2025, or as soon thereafter as the matter may be heard in Courtroom 10 of the above-entitled Court located at 1301 Clay Street, Suite 400S, Oakland, CA 94612, Plaintiff DAVID H. MARRON ("Plaintiff") will and does hereby move this Court for an Order approving:

- The terms of the PAGA Settlement ("Settlement") entered into between Plaintiff, acting in her capacity as a private attorney general for the State of California, and Defendant AMN Healthcare Labor Disruption, Inc. (f/k/a Healthsource Global Staffing, Inc.;) ("Defendant")
- The appointment of Simpluris, Inc., as the Settlement Administrator;
- Final judgment.

This motion is made on the grounds that the Settlement is fair, adequate, reasonable, and within the range of possible approval. This motion will be based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Shaun Setareh, and the Declaration of David Marron, as well as exhibits attached thereto, the arguments of counsel, the documents filed in this action and any other matters as may be properly presented on or before the hearing on this motion.

DATED: April 10, 2025                    SETAREH LAW GROUP


                                         _/s/ Shaun Setareh_____
                                         SHAUN SETAREH
                                         BRIAN LOUIS
                                         Attorneys for Plaintiff
                                         DAVID MARRON

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3        This motion seeks approval of the PAGA settlement of this representative action between

4   Plaintiff DAVID H. MARRON ("Plaintiff") in this representative action against AMN

5   HEALTHCARE LABOR DISRUPTION, INC. (f/k/a Healthsource Global Staffing, Inc.;)

6   ("Healthsource" or "Defendant") (collectively with Plaintiff, the "Parties").

7        As the result of arm's-length negotiations for over a year, the Parties have reached a fair and

8   reasonable PAGA settlement of Plaintiff's claims. Pursuant to the Settlement Agreement

9   ("Settlement")[1], Plaintiff now requests that the Court enter an order approving: (1) the terms of the

10  Settlement; (2) the appointment of Simpluris, Inc., as the Settlement Administrator; and (3) final

11  judgment.

12       The Agreement provides for a Total Settlement Amount ("TSA") of **$720,080.00**. Agreement,

13  ¶ 4.  The TSA shall include all payments contemplated by the Agreement, including: (i) all Payments to

14  the PAGA Settlement Group Members ("PAGA Members"); (ii) the LWDA Payment; (iii) the

15  Plaintiff's Counsel Fees and Expenses Payment, to compensate Plaintiff's Counsel for all work

16  performed thus far and all work remaining to be performed in connection with the Settlement, including

17  without limitation documenting and administering the Agreement and securing Court approval; and (iv)

18  the Settlement Administrator's fees and expenses. *Id.*   No PAGA Member will have to submit a claim

19  in order to recover his or her pro rata value equal to the number of PAGA pay periods each of the PAGA

20  Members worked during the period from October 17, 2017 through the date of settlement approval,

21  ("Individual Settlement Payment"), and checks will be mailed directly to them. *Id.*, at ¶ 9 (a)-(g).  Any

22  checks issued to PAGA Members shall remain valid and negotiable for 180 calendar days after the date

23  they are issued. *Id.*, at ¶ 9 (f). In the event that a Settlement Share check has not been cashed within 180

24  calendar days, then such funds will be sent to the California State Controller's Office Unclaimed

25

26 ───────────────

27      [1] The executed settlement agreement between the Parties is attached as **Exhibit 1** to the Declaration of Shaun Setareh in Support of Plaintiff's Motion for Approval of PAGA Settlement

28  ("Setareh Decl.") filed concurrently herewith. Setareh Decl., at ¶ 3, Exh. 1.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PAGA SETTLEMENT

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1   Property Fund in the name of PAGA Members who did not cash their settlement checks. *Id.*  As

2   estimated by Defendant at the time the Agreement was executed, there are 10,000 PAGA Members.

3   Declaration of Shaun Setareh ("Setareh Decl."), ¶ 37. Defendant represented an estimated 45,005

4   collective workweeks from October 17, 2017 to April 30, 2024. Settlement, ¶ 9 (c).

5       The Net Settlement Amount ("NSA") estimated to be paid to PAGA Members and the LWDA–

6   after all Court-approved deductions from the TSA, *i.e.*, Plaintiff's Counsel fees of $240,026.67 (33.33%

7   of the TSA) and litigation costs of up to $12,000.00, Plaintiff's requested Representative Award of

8   $10,000.00, and settlement administration costs of $19,410.00, is **$438,643.33**. *Id.*, ¶ 36. After payment

9   to the LWDA, $109,660.83 remains to be disbursed to the PAGA Settlement Group Members. *Id.* The

10  average estimated Settlement Share for each PAGA Settlement Group Member is **$10.96**. *Id.*, ¶ 48.

11      As discussed below, the Settlement reached here is a good result given the claims at issue in this

12  case, the risk that the allegedly aggrieved group is unmanageable, the merit of the defenses and

13  affirmative defenses, and the significant monetary amount obtained for the aggrieved employees, which

14  compares favorably to similar settlements approved by other courts.

15  **II.    RELEVANT BACKGROUND**

16      **A.    FACTUAL AND PROCEDURAL BACKGROUND**

17      Defendant provides nursing strike assignments across the United States. Setareh Decl., ¶ 4.

18  Defendant hired Plaintiff in approximately November 2013 as a strike nurse. *Id.*

19      On October 17, 2018, Plaintiff submitted his PAGA Notice to the LWDA and against Defendant

20  Healthsource. Setareh Decl., ¶ 5. On October 18, 2018, Plaintiff filed a class action Complaint in the

21  Superior Court of the State of California for the County of Alameda Case No. RG18905050 on behalf

22  of himself and others similarly situated, and on or about December 11, 2018, Plaintiff filed a First

23  Amended Complaint alleging claims for: (1) violation of the Fair Credit Reporting Act (15 U.S.C. §

24  1681b(b)(2)(A)); (2) violation of the Fair Credit Reporting Act (15 U.S.C. §§ 1681d(a)(1) and 1681g(c));

25  (3) violation of the Investigative Consumer Reporting Agencies Act (California Civil Code §§ 1786 *et*

26  *seq.*); (4) violation of the Consumer Credit Reporting Agencies Act (California Civil Code §§ 1785 *et*

27  *seq.*); (5) failure to provide meal periods (Labor Code §§ 204, 223, 226.7, 512 and 1198); (6) failure to

28  provide rest periods (Labor Code §§ 204, 223, 226.7, and 1198); (7) failure to pay hourly wages (Labor

2

Code §§ 223, 510, 1194, 1194.2, 1197, 1197.1, and 1198); (8) failure to indemnify for business expenses (Labor Code § 2802); (9) failure to provide accurate wage statements (Labor Code § 226); (10) waiting time penalties (Labor Code §§ 201, 202, and 203); (11) unfair competition (Business & Professions Code §§ 17200 *et seq.*); and (12) the Private Attorneys General Act of 2004 (Labor Code §§ 2698 *et seq.*) (the "Action"). *Id.* The action was removed to federal court on March 25, 2019. *Id.*, ¶ 6. ECF 1. On September 13, 2019, the Court granted Defendant's motion to compel individual arbitration of Plaintiff's class claims, and stayed the remaining claims under PAGA. *Id.* ECF 27.

Plaintiff proceeded with his individual claims in arbitration before the American Arbitration Association ("AAA") and Arbitrator Jiyun Cameron Lee, AAA No. 01-20-0009-7398. *Id.*, ¶ 7. The Parties settled Plaintiff's individual claims (including Plaintiff's individual PAGA claim), and the individual arbitration was dismissed and closed by AAA on or about April 4, 2024. *Id.*

The Parties agreed to mediation with Jeffrey Winikow, which took place on April 4, 2022. *Id.*, ¶ 8. For the purposes of mediation the Parties exchanged informal discovery, including policies, sample data and wage statements, and Plaintiff's employment records. *Id.* After lengthy post-mediation negotiations, the Parties agreed to resolve all nonindividual PAGA claims alleged by Plaintiff in the Action. *Id.*

On December 19, 2024 Plaintiff filed an amended LWDA letter to include any facts and theories advanced in this litigation and/or at mediation, including without limitation any and all PAGA claims related to recordkeeping violations under Labor Code §§ 1174, 1174.5, and 226; violation of Labor Code § 2802 for unreimbursed business expenses for incidental travel expenses and use of personal cell phones; failure to pay contractual wages in violation of Labor Code §§ 223 and 225.5 for unpaid bonuses promised for reporting to the first day of work and completing training modules; and allegations that PAGA Members were required to take combined meal and rest periods, not allowed to record rest periods, and denied rest periods. *Id.*, ¶ 9.

On March 6, 2025 the Court granted the parties stipulation to allow Plaintiff to file a Second Amended Complaint. *Id.*, ¶ 10. Plaintiff filed his Second Amended Complaint on April 9, 2025. *Id.*

**B.    CLAIMS AND DEFENSES**

Plaintiff alleges that while working as an hourly, non-exempt strike nurse, Plaintiff and

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

3

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1   aggrieved employees were not paid for all the time spent traveling at the direction of Defendants. *Id.*, ¶

2   5. Plaintiff and the aggrieved employees were typically flown by plane to the city where they would be

3   working and would stay at a hotel for the duration of their assignment. Plaintiff further alleges that

4   Plaintiff and the aggrieved employees would have to take a bus to the job site each day, check-in at the

5   location where they would perform onboarding requirements, and only after they arrived at the actual

6   department where they would sign in would they be considered "on the clock." *See generally*, ECF 68.

7   Plaintiff further alleges that Plaintiff and the aggrieved employees were regularly not provided with

8   uninterrupted meal periods of at least thirty minutes for each five hours worked, or rest periods of at

9   least ten minutes for each four hours worked because Defendant required meal and rest breaks to be

10  combined, and understaffing each shift. *Id.* Plaintiff alleges that Defendant violated the rights of Plaintiff

11  and aggrieved employees by failing to reimburse them for all necessary business expenses incurred,

12  including travel and food expenses incurred in connection with traveling to each assignment, along with

13  the required use of personal cell phones to communicate with Defendant regarding their shift

14  assignment. *Id.* Plaintiff further alleges Defendant did not pay him or aggrieved employees for all

15  contractually earned bonuses. *Id.*  Plaintiff also complains that he was not provided with compliant wage

16  statements and was not paid all of his final wages on time (direct and derivative). *Id.*

17      Defendant generally denies all of Plaintiff's allegations. Defendant contends that it properly

18  compensated and reimbursed the allegedly aggrieved PAGA Members and did not violate the law

19  including the California Labor Code, Wage Orders, and California Code of Regulations. *Id.*

20  Healthsource contends that it did not violate the law in any way with respect to Plaintiff or any of the

21  allegedly aggrieved PAGA Members. *Id.*

22      **C.    PLAINTIFF'S ASSESSMENT OF DAMAGES**

23      Under the applicable version of PAGA, Cal. Lab. Code §§ 2699(f)(2) and 2699.5, employers

24  that violate certain provisions of the Labor Code are subject to penalties according to the following

25  formula:

26      1. $100.00 for the initial violation per employee per pay period; and

27      2. $200.00 for each subsequent violation per employee per pay period.

28      These penalties must be allocated seventy-five percent (75%) to the LWDA and twenty-five

4

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

percent (25%) to the affected employees. Cal. Lab. Code § 2699(i). Plaintiff alleged that, because of the violations described above, Defendant is liable for these penalties for each applicable pay period during the PAGA period. In ascertaining exposure for the allegations described above, Plaintiff considered several important cases. First, courts considering the issue have refused to "stack" PAGA penalties, severely limiting the recoverable PAGA penalties. *See Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 529 (2018) (approving PAGA penalty reduction to $5 per pay period); *See also Atempa v. Pedrazzani*, 27 Cal. App. 5th 809 (2018); *Bernstein v. Virgin Am., Inc.*, 3 F.4th 1127, 1144 (9th Cir. 2021) ("Under California law, '[a] good faith dispute' that an employer is required to comply with a particular law 'will preclude imposition' of heightened penalties.").

Defendant argued that even if Plaintiff was able to recover some PAGA penalties on behalf of other aggrieved employees, courts frequently use their discretion under Cal. Lab. Code § 2699(e)(2), to significantly reduce PAGA penalties where such penalties would be unjust, arbitrary, and improper. *See*, *e.g.*, *Carrington*, 30 Cal. App. 5th at 529. Setareh Decl., ¶ 15.

Defendant further contended any inquiry into why some employees missed meal and rest breaks would necessarily require an individualized inquiry that would prevent this issue from being resolved on behalf of all aggrieved employees. Thus, Plaintiff would not be able to prove liability for alleged failure to provide compliant meal periods and rest breaks; or that to establish liability for the failure to provide compliant meal periods and rest breaks would require an individualized inquiry that would prevent these issues from being resolved on behalf of all aggrieved employees. *Id.*, ¶ 14.

Plaintiff further contemplated the risk that he would be unable to recover PAGA penalties at the subsequent violation rate of $200 per pay period. California's appellate courts have held that "[u]ntil the employer has been notified that it is violating a Labor Code provision (whether or not the commissioner or court chooses to impose penalties), the employer cannot be presumed to be aware [of the violation]" and therefore, until a Court or the Commissioner issues a finding of a violation, the initial $100 violation rate applies for each pay period in which the alleged violation occurred. *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1209 (2008). Thus, Defendant argued that even if the Plaintiff was able to establish any violation of the Labor Code, the PAGA penalties assessed for these violations will be computed at the $100 rate, as opposed to the $200 per pay period rate at maximum, and there is a

5

1  likelihood that a further reduction of the penalty to $5 per pay period as approved in *Carrington* would

2  apply given Defendant's compliance with the Labor Code as discussed above. Setareh Decl., ¶¶ 15-17.

3      Continued litigation of this lawsuit presented Plaintiff and Defendant with substantial legal risks

4  that were (and continue to be) very difficult to assess. In light of the uncertainties of protracted litigation,

5  the Settlement amount reflects a fair and reasonable recovery for the settlement PAGA Members.  The

6  Settlement amount is a compromise figure.  By necessity, it took into account risks related to liability,

7  damages, and all the defenses asserted by the Defendant as to all such matters.

8      Here, there were approximately 45,005 weekly pay periods within the applicable PAGA Period.

9  Settlement, ¶ 9(c). However, given the likelihood that the pay period violation rate was significantly

10 lower than 100% and the very real risks that a factfinder might agree with Defendant's arguments or

11 Defendant's strong good faith defenses, Plaintiffs ascribed a 50% reduction to the number of pay periods

12 at issue. Setareh Decl., ¶ 20. Furthermore, Plaintiff ascribed a further 50% reduction to the number of

13 pay periods at issue based on Defendant's pay periods being weekly. In June of 2024, Labor Code

14 Section 2699 was amended to add subsection (o), which reduces the penalty recoverable under PAGA

15 by one-half if the employer's pay period is weekly rather than biweekly or semimonthly. *See* Lab. Code.

16 § 2699(o). Thus, Defendant's total realistic exposure in this case was approximately $1,125,125.00.

17     While Plaintiff continues to believe in the merits of the case, Defendant argues it fully complied

18 with California's wage and hour laws, and thus faced minimal exposure, if any. Therefore, the Maximum

19 Settlement Amount of **$720,080.00** is an excellent result and within the zone of reasonableness for both

20 parties. If approval is granted, Plaintiffs will have recovered 64% of their estimated realistic exposure

21 value in this case—a fair compromise of the claims, by any measure.

22     As mentioned above, courts can, and regularly do, exercise their discretion to reduce the amount

23 of PAGA penalties. Here, with approximately 45,005 pay periods at issue among 10,000 Aggrieved

24 Employees, under *Carrington v. Starbucks Corp.*,30 Cal. App. 5th 504 (2018) an appropriate settlement

25 amount could be as low as $225,025. Instead, despite the risks of the case identified through mediation

26 and exchange of documents and information with opposing counsel, the Total Settlement Amount of

27 $720,080.00 represents a $16.00 penalty per pay period assuming a 100% violation rate for all pay

28 periods in the PAGA period. The portion of the Net Settlement Amount to be distributed to the

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

approximately 10,000 Aggrieved Employees in this case is at least $109,660.83 — or roughly $10.96 per Aggrieved Employee. To the best of the undersigned counsel's knowledge, other than this Action, there are no other like claims asserted or filed by PAGA Members. To the best of the undersigned counsel's knowledge, no PAGA Member has refrained from bringing an action with claims similar to those raised in the Action, whether in reliance on the Action or otherwise, and who thus might be prejudiced by dismissal of the Action. Setareh Decl. ¶ 29.

**III.    THE SETTLEMENT**

The following is a summary of the material terms of the Settlement:

**A.    THE SETTLEMENT GROUP**

For purposes of the Settlement, "PAGA Members" means, based upon Healthsource's representation to Plaintiff, the approximately ten thousand (10,000) non-exempt current and former aggrieved employees of Healthsource in California during the Settlement Period who worked one or more pay periods.

**B.    TOTAL SETTLEMENT AMOUNT AND DISTRIBUTIONS**

Defendant will pay a maximum aggregate TSA of $720,080. Settlement, ¶ 4. The TSA covers: (1) penalty payments to the PAGA Members by virtue of payments through the Settlement Administrator; (2) PAGA Counsel's fees; (3) PAGA Counsel's costs; (4) payment of the third-party Settlement Administrator; (5) PAGA penalties paid to the State of California (LWDA); and (6) service payment to Plaintiff. *Id.*

It is estimated that the NSA payable to PAGA Members and the Labor & Workforce Development Agency ("LWDA") will be $**438,643.33** out of the $**720,080.00** TSA after all Court-approved deductions from the TSA – i.e., Plaintiff's Counsel fees of $**240,026.67** (33.33% of the TSA)[2] and litigation costs of up to $12,000.00, settlement administration costs of $19,410, and Plaintiff's representative enhancement award of $10,000.00. After the payment of $328,982.50 to the LWDA, the amount payable to PAGA Members will be $ 109,660.83. To fairly allocate settlement funds based on

---

[2] Plaintiff intends to file a separate Motion for Attorney's Fees shortly after the filing of this Motion

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1  each PAGA Members' dates of employment as a PAGA Member, the distribution amount will be

2  calculated as follows: Settlement Administrator will allocate Settlement Shares from the Net Settlement

3  Amount to the PAGA Members in proportion to the number of workweeks worked for Healthsource

4  during the Covered Period in comparison to the total number of workweeks worked by all PAGA

5  Members. The payments to Aggrieved Employees shall be reported as non-wage payments in the year

6  of payment and reported on a Form 1099 with no withholdings or payroll taxes because the Action

7  sought civil penalties. Settlement, ¶ 4(a)-(e).

8      The TSA is subject to the following Modification provision: Defendant has represented that as

9  of April 30, 2024., the total number of PAGA Members was estimated to be 10,000, with approximately

10  45,005 collective workweeks from October 17, 2017 to April 30, 2024. Settlement, ¶ 9(c). The Parties

11  agree that, to the extent the number of pay periods increases beyond 45,005 by more than 10% (i.e., an

12  additional 4,501 pay periods), Defendant shall have ten (10) court days after the Settlement

13  Administrator notifies the Parties of the number of pay periods worked to elect the option to either: (i)

14  increase the Total Settlement Amount by the percentage increase above 10%. *Id.* For example, if the

15  number of pay periods increases by 11%, (i.e., 450 more than 49,506 total pay periods), the Total

16  Settlement Amount shall increase by 1%, or $7,200.80; if the pay periods increase by 12%, then the

17  Total Settlement Amount increase by 2%, and so on; or (ii) to cap the released pay periods at 49,506

18  pay periods, so that there is no increase in the Total Settlement Amount. In the event Defendant elects

19  to cap the released pay periods as described in Section 9.c.(ii), the release shall only apply to those

20  capped pay periods (49,506). Settlement, ¶ 9(c). If the Total Settlement Amount increases pursuant

21  to this Section 9.c., the Parties shall notify the Court by way of stipulation and submit a proposed

22  amended judgment, if necessary, within five (5) court days after Defendant makes the election in

23  this Section 9(c). *Id.*

24  **C.    SCOPE OF THE PAGA SETTLEMENT GROUP MEMBER RELEASES**

25      In consideration for their Settlement Shares, as of the date the Settlement becomes Final, Plaintiff

26  acting on behalf of the State of California, and all PAGA Settlement Group Members, agree to release

27  any and all claims they have arising out of or in connection with any claim, theory, or primary right

28  asserted in the LWDA Letter, the Action, or which could have been asserted in the Action based on the

facts, claims, theories, or primary rights alleged in the LWDA Letter and/or the Action, for civil penalties

and all available relief under the California Private Attorneys General Act of 2004 ("PAGA") arising

during the Settlement Period. Settlement, ¶ 5(a). The Released Claims is defined as:

"As of the Effective Date, Plaintiff, the PAGA Members, and the LWDA fully and finally release Defendant, and its past, present and future agents, employees, servants, officers, directors, partners, trustees, representatives, shareholders, stockholders, attorneys, parents, subsidiaries, equity sponsors, related or affiliated companies/corporations and/or partnerships (defined as a company/corporation and/or partnership that is, directly or indirectly, under common control with Defendant or any of its parents and/or affiliates), divisions, assigns, predecessors, successors, insurers, consultants, any actual or alleged joint employers, any client-hospitals in California that have been staffed by Defendant where PAGA Members were assigned to work during the Settlement Period, (including those explicitly named in the LWDA Letter), and alter-egos, and all of its and their respective past, present and future employees, directors, officers, agents, attorneys, stockholders, fiduciaries, parents, subsidiaries, insurers, and assigns (collectively, the "Released Parties"), from all "Released Claims." The Released Claims includes any and all claims alleged in the LWDA Letter, the Action, and all claims arising out of or in connection with the facts, theories, primary rights, or claims alleged in the LWDA Letter and/or the Action, and includes all claims under PAGA associated with or arising in connection with: (a) unpaid wages, including failure to pay minimum wages; failure to pay straight time compensation, overtime compensation, double-time compensation, including failure to include all remuneration in the regular rate of pay for purposes of overtime and double-time rates of pay; failure to pay for off-the-clock work including travel time and time spent filling out new hire paperwork; failure to timely pay wages; and/or interest; (b) missed, late, short, combined or interrupted meal and/or rest periods, including any claim for any alleged failure to pay premiums for missed, late, short, combined or interrupted meal or rest periods, or to pay such premiums at the regular rate of compensation; (c) failure to reimburse for business expenses or any other claim that Defendant allowed or required employees to bear any of the costs associated with the operation of Defendant's business, including per diem payments, the use of personal cell phones, and travel expenses; (d) penalties arising out of or related to any or all of the aforementioned claims, including wage statement penalties, recordkeeping penalties, minimum wage penalties, and waiting time penalties; (e) failure to pay unused accrued vacation or paid time off; (f) failure to timely pay wages and/or interest for temporary employees under Labor Code section 201.3; (g) inaccurate or otherwise improper or missing wage statements and/or failure to keep or maintain accurate records; and (h) attorneys' fees and costs associated with any of the aforementioned claims. For purposes of clarification, the claims released by the PAGA Members and the LWDA include any and all claims under PAGA that arise out of or in connection with the claims, facts, theories or primary rights alleged in the LWDA Letter, the Action, and any claims which could have been asserted in the Action arising from the alleged facts, claims, theories, and/or primary rights alleged to have been invaded to the fullest extent permitted by law. Without limitation by any other language in this Agreement, the Released Claims includes claims under PAGA alleging violation of the Wage Orders of the California Industrial Welfare Commission, including but not limited to Wage Orders 4-2001, 5-2001; and/or alleging violation of California Labor Code 201, 201.3, 202, 203, 204, 223, 225.5, 226, 226.3, 226.7, 227.3, 510, 512, 558, 1174, 1174.5, 1194, 1194.2, 1197, 1197.1, 1198, 2802, and 2698 *et seq.* This release does not release any individual's non-PAGA claims." Settlement, ¶ 5(a).

Additionally, Plaintiff has agreed to sign a general release in consideration of the Service Award,

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1    as follows:

2    "Plaintiff's Released Claims include, but are not limited to, any claims, causes of action, rights, actions, suits, charges, or disputes that have been or could be asserted against any of the Released Parties arising out of, in connection with, or in any way related to (i) any and all claims alleged in the Action or the LWDA Letter, and any and all claims arising from or related to the facts, theories, primary rights, or claims alleged in the Action, and any claims which could have been asserted in the Action arising from the alleged facts, claims, theories, and/or primary rights alleged to have been invaded to the fullest extent permitted by law; (ii) Plaintiff's application for employment with Defendant, employment with Defendant and/or the termination of Plaintiff's employment with Defendant; (iii) any term or condition of Plaintiff's employment with Defendant, including but not limited to any and all wages, compensation, salaries, minimum wage, overtime, holiday pay, bonuses, commissions, pay, allowances, monies, meal and rest period violations or premiums, off the clock work, expenses/reimbursements, wage statements, employee benefits, sick/vacation pay, sick leave, severance pay, retention pay, paid leave benefits, notification rights, any other wage and hour related claims, and any other benefits, penalties, interest, damages, and promises related to the same; and (iv) any claims to any equity interest in Defendant, including without limitation stock options, shadow stock, restricted stock, membership units, distribution rights, partnership, stock, and all other forms of equity.  Without limiting the foregoing, and by way of examples only, the Plaintiff's Released Claims also extend to any and all claims for alleged (a) violation of the National Labor Relations Act (NLRA) (to the extent permitted by law), Title VII of the Civil Rights Act (Title VII), the Americans With Disabilities Act of 1990 (ADA), the Age Discrimination in Employment Act (ADEA), the Older Worker Benefit Protection Act (OWBPA), the Employee Retirement Income Security Act (ERISA) (excluding vested benefits); the Rehabilitation Act, the Occupational Safety and Health Act (OSHA) (federal and California), the American Rescue Plan Act (ARPA), the Families First Coronavirus Response Act (FFCRA), the Fair Labor Standards Act (FLSA), the Family and Medical Leave Act (FMLA), the California Family Rights Act (CFRA), the Worker Adjustment and Retraining Notification Act (federal and California), the California Fair Employment and Housing Act (FEHA), the Unfair Business Practices Act/Unfair Competition Law (UCL); the California Labor Code, the California Government Code, the California Civil Code, the applicable California Wage Order(s), and the California Private Attorneys General Act (to the extent permitted by law) (all as amended); (b) discrimination or harassment on the basis of any protected status, such as race, color, ancestry, national origin (including language use restrictions), citizenship, religious creed (including religious dress and grooming practices), sex (which includes pregnancy, childbirth, breastfeeding and medical conditions related to pregnancy, childbirth or breastfeeding), marital status, domestic partnership status, sexual orientation, gender, gender identity or gender expression, veteran status, military status, political affiliation, family care or medical leave status or the denial of family and medical care leave, age, physical or mental disability (including HIV and AIDS), medical condition (including cancer and genetic characteristics), genetic information, or any other basis protected by applicable federal, state or local law, rule, ordinance or regulation; (c) any whistleblower or retaliation claims on the basis of any protected activity or other protected basis; (d) breach of any express or implied promise, contract or agreement (express or implied), or breach of the implied covenant of good faith and fair dealing; (e) any tort or common law claims, including wrongful discharge, intentional or negligent infliction of emotional distress, negligence, fraud, misrepresentation, defamation, interference with prospective economic advantage, or other tort or common law actions; (f) claims for misclassification, wage and hour, or other claims related to hours, conditions, or compensation related to work; and (g) any other violation of local, state, or federal law, constitution, statute, regulation, ordinance, order, guidance, resolution, public policy,

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PAGA SETTLEMENT

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

contract, or tort or common law claim, whether for legal or equitable relief, having any bearing whatsoever on the terms and conditions of employment, or association or working relationship, with any of the Released Parties, including but not limited to any allegations for penalties, interest, costs and fees, including attorneys' fees, incurred in any of these matters, which Plaintiff ever had, now has, or may have as of the date of this release. All such claims, liabilities or causes of action (including, without limitation, claims for related attorneys' fees and costs) are forever barred by this Agreement regardless of the forum in which they may be brought. The Parties intend for this release to be as broad as possible. Even if Plaintiff discovers facts in addition to or different from those that Plaintiff now knows or believes to be true with respect to the subject matter of Plaintiff's claims, those claims will remain released and forever barred." *Id.*

Plaintiff further agrees to expressly, knowingly and voluntarily waive the following:

"[A]ny and all rights and benefits conferred by section 1542 of the California Civil Code and does so understanding and acknowledging the significance and consequence of such specific waiver of section 1542, which provides:

**A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

Notwithstanding the foregoing, Plaintiff does not waive or release any claim which cannot be waived or released by private agreement. Further, nothing in this Settlement shall prevent Plaintiff from filing a charge or complaint with, or from participating in, an investigation or proceeding conducted by the SEC, OSHA, EEOC, CRD (formerly DFEH), NLRB or any other federal, state or local agency charged with the enforcement of any employment or other applicable laws. Plaintiff, however, understands that by signing this Settlement, Plaintiff waives the right to recover any damages or to receive other relief in any claim or suit brought by or through the EEOC, the CRD (formerly DFEH) or any other state or local deferral agency on Plaintiff's behalf to the fullest extent permitted by law, but expressly excluding any monetary award or other relief available from the SEC/OSHA, including an SEC/OSHA whistleblower award, or other awards or relief that may not lawfully be waived." Settlement, ¶ 5.

**D.    PAGA PAYMENT AND NOTICE PROCEDURES**

If appointed by the Court, Simpluris, Inc., serving as Settlement Administrator, will have sole and exclusive responsibility for: sending the explanatory letters to the PAGA Members, for calculating Individual Settlement Payments (defined below), setting up a Qualified Settlement Fund that meets the requirements under U.S. Treasury Regulation section 468B-1, and preparing all checks and mailings in compliance with all requirements set forth in Settlement ¶ 9. ; conducting a National Change of Address search and using Accurint and other reasonable and cost-effective skip trace methods to locate any PAGA Member whose Notice Packet was returned by the U.S. Postal Service as non-deliverable, and re-mailing the Notice Packet to the PAGA Settlement Group Member's new address; issuing the checks

to effectuate the payments due under the Settlement; and otherwise administering the Settlement pursuant to this Agreement. The Settlement Administrator will have the final authority to resolve all disputes concerning the calculation of a PAGA Settlement Group Member's Settlement Share, subject to the dollar limitations set forth in this Settlement. *Id.*,

Should the Court approve the Settlement, within forty-five (45) days of Final Judgment, Defendant shall: (1) deposit with the Settlement Administrator the Total Settlement Amount (the "Funding"); and (2) within fifteen (15) days after Final Judgment, Defendant shall provide to the Settlement Administrator a list of the PAGA Members that identifies for each PAGA Member their full name, social security number, last known address, last known telephone number(s), and the number of pay periods for each PAGA Member during the Settlement Period. Settlement, ¶ 9(a). However, no funds will be distributed to anyone until all deadlines to appeal have passed, or if an appeal is filed, after all appeals have been resolved without impacting the effectiveness of this Settlement, whichever is later. *Id.*

The Notice that is mailed out to PAGA Members shall be in a form substantially similar to the form attached to the Declaration of Shaun Setareh as **Exhibit 2**. *Id.* Within ten (10) days after receipt of the list of PAGA Members, the Settlement Administrator shall run all the addresses of PAGA Members through the United States Postal Service NCOA database to obtain current address information.  Within thirty (30) days after Funding, the Settlement Administrator shall remit:  (1) Settlement Administrator Fees to itself; (2) PAGA Counsel's fees and costs to PAGA Counsel; (3) any Service Award to Plaintiff; and (4) the remaining Net Settlement Amount, as awarded by the Court, in the amount of 25% of the Net Settlement Amount to the PAGA Members and 75% of the Net Settlement Amount to the LWDA. *Id.*, ¶ 9(d).

All PAGA Members will have one-hundred eighty (180) days after the Settlement Administrator initially mails the Notice and Settlement Share to PAGA Members to cash his or her Settlement Share. *Id.*, ¶ 9(f). Funds represented by settlement checks returned as undeliverable and those settlement checks remaining un-cashed for more than 180 days will be tendered by the Settlement Administrator to the State Controller's Office, Unclaimed Property Division in the name of each PAGA Member. *Id.*

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

**E.    TAX TREATMENT**

Because this case is being resolved on a PAGA-only basis with all recovery arising from penalties (rather than unpaid wages), IRS Form 1099 will be issued to the PAGA Members and Plaintiff for settlement payments. *Id.* at ¶ 10. Payment of Plaintiff Counsel's fees and litigation costs will also be reflected in an IRS Form 1099 to Plaintiff's counsel. *Id.*

**IV.    THE SETTLEMENT MEETS THE STANDARDS FOR PAGA APPROVAL**

**A.    STANDARD OF REVIEW**

"An employee bringing a PAGA action does so as the proxy or agent of the state's labor law enforcement agencies, ... who are the real parties in interest." *Sakkab v. Luxottica Retail N. Am. Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (internal citations omitted). Thus, "[a]n action brought under the PAGA is a type of *qui tam* action." *Id.* at 429. Because a PAGA action is brought as proxy of law enforcement agencies, "[t]here is no requirement that the Court certify a PAGA claim for representative treatment like in Rule 23 ...." *Villalobos v. Calandri Sonrise Farm LP*, 2015 WL 12732709, at *5 (C.D. Cal. July 22, 2015).  However, because a settlement of PAGA claims compromises a claim that could otherwise be brought by the state, the PAGA provides that "court[s] shall review and approve any settlement of any civil action filed pursuant to [PAGA]." California Labor Code § 2699(1)(2).

"There is no binding authority identifying the proper standard of review of PAGA settlements to be employed by the court." *Ambrose v. US Med-Equip, LLC,* 2024 WL 307843, at *3 (E.D. Cal. Jan. 26, 2024) (*citing Perez v. All Ag, Inc.*, 2021 WL 3129602, at *3). "In the class action context, where PAGA claims are also often brought, a district court must independently determine that a proposed settlement agreement is 'fundamentally fair, adequate and reasonable' before granting approval." (*citing Beltran v. Olam Spices & Vegetables, Inc.,* No. 118CV01676JLTSAB, 2023 WL 1467118, at *20 (E.D. Cal. Feb. 2, 2023) *(quoting Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982)); *see also Perez,* 2021 WL 3129602, at *3 (same).* "However, this is not a class action, and PAGA claims are intended to serve a decidedly different purpose—namely to protect the public rather than for the benefit of private parties. *Perez,* 2021 WL 3129602, at *3 (citing Arias v. Superior Court,* 46 Cal. 4th 969, 986).

In *O'Connor v. Uber Techs., Inc.*, 201 F.Supp.3d 1110, 1133 (N.D. Cal. 2016), where both

13

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1  class action and PAGA claims were covered by a proposed settlement, the LWDA "stressed that":

2      It is thus important that when a PAGA claim is settled, the relief provided for under the PAGA
3      be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the
       public and, in the context of a class action, the court evaluate whether the settlement meets the
       standards of being "fundamentally fair, reasonable, and adequate" with reference to the public
4      policies underlying the PAGA.

5  *Id.*; *see also Perez*, 2021 WL 3129602, at *4 n.5 ("The LWDA is not aware [of] any existing case law

6  establishing a specific benchmark for PAGA settlements, either on their own terms or in relation to the

7  recovery on other claims in the action." (*quoting O'Connor v. Uber Techs., Inc.*, No. 3:13-cv-03826-

8  EMC (N.D. Cal. Jul. 29, 2016), ECF No. 736 at 2–3)).

9      **B.    THE SETTLEMENT SHOULD BE APPROVED**

10         **1.    The Settlement Falls Within the Range of Possible Approval**

11     "The PAGA is limited to the recovery of civil penalties." *Villacres v. ABM Industries Inc*. (2010)

12  189 Cal.App.4th 562, 579. Under PAGA, the default civil penalty for an employer's initial violation is

13  one hundred dollars ($100) per employee per pay period, and two hundred dollars ($200) per pay period

14  for any subsequent violations. Lab. Code § 2699(f)(2). While courts have the discretion to reduce civil

15  penalties under certain circumstances, there is no requirement to do so.

16     As of April 30, 2024, there were approximately 10,000 aggrieved employees during the PAGA

17  Period who worked 45,005 pay periods. Settlement, ¶ 9 (c). These pay periods are reduced to 11,251

18  after ascribing a 50% reduction based on Defendant's strong good faith defenses and the possibility that

19  a factfinder might agree with Defendant's arguments and a further 50% reduction to account for

20  Defendant's weekly pay periods. Setareh Decl., ¶ 20. Based on a penalty of $100 for each pay period in

21  which violation occurs, Defendant's total realistic exposure was approximately $1,125,100.00. *Id*.

22  Accordingly, a TSA of **$720,080**, or 64% of Defendant's potential realistic exposure, is more than fair

23  and adequate. *Id.*

24     The Settlement should be approved because it confers a substantial benefit on PAGA Members,

25  while proceeding with litigation would impose significant risk with no guarantee of increased benefits,

26  with a chance that the company may not be a going concern to be able to pay any judgment at all. Setareh

27  Decl., ¶¶ 19(v)-20.

28         **2.    Although the Parties Dispute Whether Any Violations Occurred, the**

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

14

**Settlement Achieves Compliance With, and Deters Violations of, State Labor Laws**

While the Parties dispute whether Defendant's employment practices violate the Labor Code, this litigation has undisputedly achieved compliance with Labor Code sections referenced in the Settlement due to the significant amount that Defendant has agreed to pay for these alleged violations. Moreover, the significant amount will also serve as a deterrent to similar violations. Accordingly, the proposed Settlement reasonably advances PAGA's purpose by achieving compliance with the Labor Code and deterring similar violations.

### 3.    The Settlement Serves to Enlist Private Citizens in Enforcement of PAGA

The proposed Settlement acts to encourage private enforcement of PAGA. Through the Settlement, Plaintiff's counsel will receive attorneys' fees and costs as determined by the Court, and all PAGA Members will receive a 25% share of the PAGA allocations, as well as notice of the claim.

### 4.    The Settlement Is "Just" and "In the Public Interest"

The proposed Settlement is both just and in the public's interest.

First, this settlement reasonably values the PAGA claims as to Defendant. While Plaintiff believes the claims are meritorious and that they would have recovered unreduced penalties, Defendant denies all liability and asserted numerous defenses to the claims. In addition, PAGA awards maximum penalties of "one hundred dollars ($100) for each Aggrieved Employee per pay period for the *initial* violation and two hundred dollars ($200) for each Aggrieved Employee per pay period for each *subsequent* violation." Lab. Code § 2699(f)(2). At least one appellate court holds, in the context of other Labor Code violations, that the "subsequent " violation penalty rate for a Labor Code does not apply until an employer is notified that its conduct violates the law. *Amaral*,163 Cal. App. 4th at 1207-09. Nevertheless, Defendant has agreed to pay a Total Settlement Amount of **$720,080.00** in exchange for a PAGA release involving approximately 10,000 Aggrieved Employees who were subjected to similar working conditions during the applicable time frame. Accordingly, Defendant is paying an average of **$72.01** ($720,080 ÷ 10,000) per Aggrieved Employee. If the Court grant's Plaintiff's subsequent Motion for Attorney's Fees and Costs, the State and the Aggrieved Employees will still share approximately **$48.01** ($480,053.33 ÷ 10,000) per Aggrieved Employee for civil penalties – still

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1     a significant and reasonable recovery.[3]

2          Second, the proposed Settlement, even with deductions, provides a substantial sum to the State:

3 **$328,982.50** (75% of $438,643.33). It also provides a small sum to each employee (around **$10.96**) on

4 a *pro-rata* basis. (The aggregate sum provided to Aggrieved Employees (assuming all deductions) is

5 **$109,660.83**.) However, the purpose of PAGA is not to compensate employees, who retain any private

6 right of action they may have under the applicable Labor Code provisions. In that respect, the Settlement

7 also requires each employee receive a notice describing this litigation and the settlement sum. Plaintiff

8 contends this notice will educate Aggrieved Employees as to the requirements of the Labor Code,

9 something that is in the public interest and consistent with PAGA's purpose. *See* Lab. Code § 2699(j)

10 (stating civil penalties recovered under PAGA shall be distributed to the LWDA for [among other things]

11 "education of employers and employees about their rights and responsibilities under this code.")

12          Third, public policy strongly favors the settlement of litigation. *Consumer Advocacy Group v.*

13 *Kintetsu, supra*, 141 Cal.App.4th at 63. Because the proposed Settlement is neither unjust nor ignores

14 the public interest, it should be approved.

15 **V.**     **NORTHERN DISTRICT PROCEDURAL REQUIREMENTS FOR CLASS ACTION**

16        **SETTLEMENTS**

17          Keeping in mind that because a PAGA action is brought as proxy of law enforcement agencies,

18 "[t]here is no requirement that the Court certify a PAGA claim for representative treatment like in Rule

19 23 ...." *Villalobos v. Calandri Sonrise Farm LP*, 2015 WL 12732709, at *5 (C.D. Cal. July 22, 2015).

20 Thus, given there is no class settlement approval being sought, the *Procedural Guidance for Class*

21 *Action Settlements* is inapplicable here. Nevertheless, Plaintiff will nonetheless address the *Procedural*

22 *Guidance*.[4]

23 _____

24     [3] It is appropriate to consider the gross award (before deductions) in comparing the

25 litigation value of a case against a settlement award. Among other things, it is appropriate to pay
fees to of a common fund, even in a fee-shifting case, "to avoid the unjust enrichment of those

26 who benefit from the fund that is created, protected, or increased by litigation and who otherwise
bear none of the litigation costs." *Sobel v. Hertz Corporation* (D. Nev. 2014) 53 F.Supp.3d 1319,

27 1326.
    [4] *Procedural Guidance* No. 8 on *cy pres* awardees is not applicable as there is no proposed

28 *cy pres* in this case. Additionally, *Procedural Guidance* No. 9 on objection timeline is not

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PAGA SETTLEMENT

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

A.    **INFORMATION ABOUT THE SETTLEMENT**

    1.    **Differences Between the Settlement Class and the Class Proposed in the Complaint**

The Second Amended Complaint ("SAC") is currently the operative complaint in this Action. Setareh Decl., at ¶ 13. While there is no "Settlement Class" here, the PAGA Members as defined in the The Settlement has been tailored to conform to the PAGA cause of action in the SAC.  *See* ECF 68. As part of the Settlement, Plaintiff agrees to release the Released Parties from all claims and causes of action for penalties recoverable under PAGA. Settlement., ¶ 5.

    2.    **Differences in the Claims to be Released and the Claims Pled**

The claims released in the Settlement Agreement mirror the claims pled in the SAC fiuled on April 9, 2025. *See* ECF 68, Settlement, 5.

    3.    **Other Cases Affected by the Settlement**

Pursuant to a joint stipulation by the Parties, Defendant previously filed an Administrative Motion to Consider Whether Cases Should be Related on June 6, 2022, identifying another case, *Patricia Louis et al. v. Healthsource Global Staffing, Inc.*, United States District Court for the Northern District of California, Case No. 4:22-cv-02436-JD. ECF 45. The Motion was based on the fact the proceedings in *Louis* concerned substantially the same parties, transactions, and event as this Matter. *Id*. The Motion was subsequently denied. ECF 46.  Given the Court's denial of the motion to relate the matters, the Parties accordingly did not previously file Notices of Pendency of Other Actions or Proceedings for other matters which also concerned substantially the same parties, transactions, and event as this Matter and which are affected by this settlement, *Melody Maldonado v. Healthsource Global Staffing, Inc.*, *et al.* San Francisco County Superior Court, Case No. CGC-22-602692, *Akimasia Walker v. Healthsource Global Staffing, Inc., et al.* Santa Clara County Superior Court, Case No 23CV410255, and *Rodell Mabalot, et al v. Healthsource Global Staffing, Inc.*, San Diego County Superior Court, Case No. 37-2023-00038506-CU-OE-CTL.

_____

applicable given that PAGA members have no right to object or opt-out of the Settlement.

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

B.    SETTLEMENT ADMINISTRATION

Plaintiff obtained bids from potential third-party settlement administrators Simpluris, Inc., ILYM Group, Inc., Apex, and Phoenix Settlement Administrators. Setareh Decl., ¶ 33. Simpluris was selected because they submitted the lowest bid of $19,410, which Plaintiff's Counsel believes is reasonable in light of Plaintiff Counsel's experience in such settlement administration matters and given the work to be done by or potentially required of the Settlement Administrator due to the various Settlement provisions. *Id.*  The TSA is to be deposited to the Settlement Administrator within forty-five (45) days of the Court's Final Approval Order. Settlement, ¶ 9(a).  The proposed forms of Notice to all PAGA Members are to be sent via mail, and where returned or non-deliverable, the Settlement Administrator shall make reasonable efforts to locate PAGA Members and re-send the notices *Id.*, ¶ 9(d)-(e). The Settlement Administrator shall promptly attempt to determine a correct address by lawful use of standard search techniques (e.g., skip trace search), and shall then perform a re-mailing if another mailing address is identified by the Settlement Administrator. *Id.*  The Agreement does not provide for any reversion of settlement funds to Defendant. *Id.*, ¶ 4(a)-(d). Over the last two years, Plaintiff's counsel has engaged with Simpluris 26 times in 26 class actions. Declaration of Denise Islas, ¶ 6. The Declaration of Denise Islas additionally outlines the experience of Simpluris and information regarding security measures to prevent data breaches. *Id.*, ¶ 4.

No PAGA Member will have to submit a claim in order to recover his or her Settlement Share, and checks will be mailed directly to them. Settlement, ¶ 9(e). As estimated by Defendant at the time the Agreement was executed, there are an estimated 10,000 PAGA Members. Setareh Decl., ¶ 33. Any checks issued to Settlement PAGA Members shall remain valid and negotiable for 180 calendar days after the date they are issued. Settlement, at ¶ 9(f).  In the event an updated address is obtained, the PAGA Notice documents will be promptly re-mailed to those PAGA Members via First Class mail. For PAGA Letters and Payment documents that are returned by the Post Office with forwarding addresses attached, these PAGA Letters and Payment documents will be promptly re-mailed to those PAGA Members at the forwarding address via First Class mail. Declaration of Denise Islas, ¶ 8.  In the event that an Individual Settlement Payment check has not been cashed within 180 calendar days, then such funds, plus any accrued interest, will be tendered to the California State Controller's Office

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

18

1    Unclaimed Property Fund in the name of Settlement PAGA Members who did not cash their

2    settlement checks. Settlement, ¶ 9(f).

### C.    NOTICE

4        The PAGA Notice is attached as Exhibit 2 to the Declaration of Shaun Setareh. The notice

5    provides the contact information for Plaintiff's counsel, information about the case and settlement

6    administrator, and instructions on how to obtain further information on PACER. Setareh Decl., ¶ X, Ex.

7    2. Furthermore, the notice informs PAGA Members that they will be bound by the terms of the

8    settlement and have no right to object or opt-out of the settlement. Settlement, ¶ 1.

### D.    OPT OUTS & OBJECTIONS

10       As this is a PAGA settlement, there is no right to opt out, object to the settlement, or

11   appeal. In *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015), the Ninth Circuit

12   held that, unlike Rule 23(c)(2), PAGA has "no notice requirements for unnamed aggrieved

13   employees, nor may such employees opt out of a PAGA action." *Id.* at 436 (citation omitted); *see

14   also O'Connor v. Uber Technologies, Inc.*, 201 F. Supp. 3d 1110, at 1133 ("[B]ecause the

15   employee's PAGA action acts as a 'substitute' for a governmental action, the judgment binds all

16   those who would be bound by an action brought by the government, including nonparty

17   employees ...[t]hus, in a lawsuit which asserts a PAGA claims and seeks class certification for

18   labor/wage claims, even class members who opt out of the class would be bound by an adverse

19   PAGA judgment or settlement.") (emphasis in original). Ninth Circuit authority also supports the

20   inclusion of language that PAGA Members do not have a right to appeal the approval of the

21   settlement. *See Saucillo v. Peck*, 25 F.4th 1118, 1126-27 (9th Cir. 2022) (holding PAGA members

22   do not have any right to appeal a PAGA settlement.); *see also Canela v. Costco Wholesale Corp.*,

23   971 F.3d 845, 851, 856 (9th Cir. 2020) (stating that "PAGA causes of action [are] nothing like

24   Rule 23 class actions," and holding that in a PAGA suit, "an aggrieved employee[ ] has no

25   individual claim of her own and is not seeking individual relief")

### E.    SERVICE AWARD

27       Shortly after filing the present motion, Plaintiff will file a subsequent motion for attorney's

28   fees and for a service award for Plaintiff. Plaintiff will seek a service award of $10,000 based on

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

19

1  the dozens of hours of work in this case, including individual arbitration, deposition, and

2  responding to written discovery. However, if the Court does not award $10,000, any amount not

3  approved will become a part of the Net Settlement Amount. Settlement, ¶ 4(c).

4  **F.    CLASS ACTION FAIRNESS ACT (CAFA) AND SIMILAR REQUIREMENTS**

5  Notice pursuant to section 1715(b) of the Class Action Fairness Act of 2005 ("CAFA") to the

6  appropriate federal and state officials is ***not*** required in this action because the settlement does ***not***

7  involve a class action (and no class claims are being released) even though it was removed from state

8  court pursuant to the CAFA removal provisions. 28 U.S.C. §§ 1332(d), 1453(b). Plaintiff submitted a

9  copy of the Settlement agreement to the LWDA concurrently with filing the present Motion. Setareh

10  Decl., ¶ 38.

11  **G.    COMPARABLE OUTCOMES**

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

| Case | Total Settlement Amount | PAGA Allocation | Pay Periods | Aggrieved Employees |
|---|---|---|---|---|
| *Ambrose v. US Med-Equip, LLC*, No. 1:23-cv-00114-SAB, 2024 WL 307843 (E.D. Cal. Jan. 26, 2024) | $57,500.00 | $21,880.50 | 525 | 30 |
| *Perez v. All Ag, Inc.*, 1:18-cv-00927-DAD-EPG, 2021 WL 3129602 (E.D. Cal. Jul. 23, 2021) | $104,000.00 | $76,000.00 | Unknown | 206 |
| *Ramirez v. Benito Valley Farms, LLC*, No. 16-cv-04705-LHK, 2017 WL 3670794 (N.D. Cal. Aug. 25, 2017) | $110,000.00 | $27,500.00 | Unknown | 226 |
| *Delgado v. MarketSource, Inc.*, No. 17-cv-07370-LHK, 2019 WL 4059850 (N.D. Cal. Aug. 28, 2019) | $83,075.00 | $45,252.98 | Unknown | 963 |
| *Cresci v. Cox Automotive Corporate Services, Inc.*, No. 2:20-cv-06832-VAP-SKx, 2021 WL 2954086 (C.D. Cal. May 5, 2021) | $104,000.00 | $67,678.40 | Unknown | 447 |
| *Decker v. AllStates Consulting Services, LLC*, No. 2:18-cv-03216-KJM-DB, 2020 WL 7769842 (E.D. Cal. Dec. 30, | $20,000.00 | $11,333.33 | | 15 |

| 2020) | | | | |
|---|---|---|---|---|
| | | | | |

Additionally, the settlements in the above references cases all achieved substantially comparable outcomes to the Parties' Settlement. For instance, here the average recovery per PAGA Member is approximately $10.96. This is within the range of average recovery in each comparator case. ($11.75 per aggrieved employee in the *Delgado* case); ($30.42 per aggrieved employee in the *Ramirez* case); ($37.85 per aggrieved employee in the *Cresci* case); ($92.23 per aggrieved employee in the *Perez* case); ($182.33 per aggrieved employee in the *Ambrose* case); ($188.88 per aggrieved employee in the *Decker* case).[5] Furthermore, the Settlement provides for $19,410 in administrative costs, which is in line with the comparator cases. *See Delgado*, 2019 WL 4059850 at *5; *Perez* 2021 WL 3129602 at *2 (approving $4,000 in settlement administration costs for 206 employees); *see also Ambrose* 2024 WL 307843 at *17 (approving $2,850 in settlement administration costs for 963 aggrieved employees). Here, Plaintiff also achieved a settlement of 64% of the calculated maximum exposure. The Settlement amount is in line with the comparator cases with regard to the amount of settlement compared to total possible exposure. *See Ambrose* 2024 WL 307843 at *7 (achieving 43% of maximum exposure); *Cresci* 2021 WL 2954086 at *3 (approving settlement of $104,000 when maximum exposure was $628,400, which is 16.5% of maximum exposure); *Perez* 2021 WL 3129602 at *5 (achieving 49% of maximum exposure)

However, even if Plaintiff did not ascribe a 50% reduction to the number of pay periods at issue based on Defendant's defenses, an exposure of $ 2,250,250.00 still amounts to a recovery of 32% of the exposure in this case. Courts in this district have approved PAGA settlements which amount to a much lower percentage of the total value of a PAGA claim. *See Chamberlain v. Baker Hughes, a GE Co., LLC*, 2020 WL 4350207 at *3–*4 (E.D. Cal. Jul. 29, 2020)(approving PAGA

---

[5] Plaintiff reached this average by multiplying the "PAGA Allocation" column in the above chart by 25%, which reflects the portion of the PAGA settlement left over after payment to the LWDA. Then, Plaintiff divided this number by the number of employees in the "Aggrieved Employees" column to reach the average payment per PAGA Member.

1   settlement amounting to 12 percent of the maximum recovery); *McLeod v. Bank of Am., N.A.*, 2018

2   WL 5982863, at *4 (N.D. Cal. Nov. 14, 2018) (approving PAGA settlement totaling 1.1% of total

3   value). Given the risks of continued litigation, and the procedural posture of this case, the recovery

4   Plaintiff received is substantial enough to provide a meaningful deterrent to future unlawful conduct.

5   **VI.    CONCLUSION**

6        For the reasons set forth above, the Parties respectfully request that the Court grant their joint

7   motion in its entirety and enter an order approving: (1) the terms of the Settlement; (2) the appointment

8   of Simpluris, Inc., as the Settlement Administrator; and (3) final judgment.

9

10  DATED:  April 10, 2025                          SETAREH LAW GROUP

11                                                  */s/ Shaun Setareh*

12                                                  SHAUN SETAREH
                                                    BRIAN LOUIS

13                                                  Attorneys for Plaintiff
                                                    DAVID MARRON

14

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PAGA SETTLEMENT