UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID H. MARRON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>HEALTHSOURCE GLOBAL STAFFING, INC.,<br><br>　　　　Defendant. | Case No. 19-cv-01534-KAW<br><br>**ORDER GRANTING MOTION FOR APPROVAL OF PAGA SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES**<br><br>Re: Dkt. Nos. 70, 74 |

Plaintiff David H. Marron originally filed the instant putative class action against Defendant Healthsource Global Staffing, Inc., asserting violations of various credit reporting statutes and California Labor Code violations. (*See* Compl., Dkt. No. 1-1.) On April 9, 2025, Plaintiff filed the operative complaint, which asserted a single cause of action for penalties under the California Private Attorneys General Act ("PAGA"). (Second Amended Compl. ("SAC"), Dkt. No. 68.)

Pending before the Court is: (1) Plaintiff's motion to approve a settlement pursuant to PAGA, and (2) Plaintiff's motion for attorney's fees, costs, administrative costs, and a service award. (Pl.'s Mot. for Approval, Dkt. No. 70; Pl.'s Mot. for Attorney's Fees, Dkt. No. 74.) Having considered the filings, the relevant legal authority, and the arguments made at the July 17, 2025 hearing, the Court GRANTS Plaintiff's motion for approval of the settlement and GRANTS IN PART and DENIES IN PART Plaintiff's motion for attorney's fees.

## I. BACKGROUND

Defendant is a California corporation that hires individuals to work during nursing strikes. (*See* Pl.'s Mot. for Approval at 2; 4/10/25 Setareh Decl., Exh. 1 ("Settlement Agreement"), Dkt. No. 70-1.) Since October 17, 2017, Defendant has hired approximately 10,000 individuals for

nursing strike assignments.  (*See* Pl.'s Mot. for Approval at 1-2.)

Plaintiff alleges that Defendants' practices violated various California Labor Code provisions.  For example, Plaintiff alleges that workers were flown by plane to their assignment location.  (SAC ¶ 10.)  On each day they were required to report to work, they would wait for a bus chartered by Defendant.  (SAC ¶ 10.)  Upon arrival at the job site, they were required to check-in and perform onboarding requirements, including reviewing new hire paperwork and signing any necessary documents.  (SAC ¶ 10.)  Workers, however, were not considered to be "on the clock" until they arrived at the actual department to which they were assigned, and thus were not paid for this time.  (SAC ¶¶ 10-11.)   Plaintiff also alleges that workers were not given compliant meal and rest breaks, but that Defendant had policies including not scheduling meal periods as part of a work shift, understaffing each work shift, imposing so much work that workers could not take breaks if they wanted to finish work on time, and requiring workers to stay on-duty during meal periods.  (SAC ¶¶ 14, 17.)  Finally, Plaintiff alleges that Defendant failed to pay contractually-earned bonuses, agreed upon per diem for food, and other expenses, as well as failed to provide accurate wage statements.  (SAC ¶¶ 22-23, 26-27, 29-30, 32.)

Plaintiff originally filed a putative class action on October 18, 2018, which also asserted a PAGA claim.  (Not. of Removal, Exh. A ("Compl."), Dkt. No. 1.)  After the case was removed to federal court, Defendant moved to compel arbitration.  (Dkt. No. 15.)  On September 13, 2019, the Court granted Defendant's motion to compel arbitration.  (Dkt. No. 27.)  Arbitration as to Plaintiff's individual claim (including his individual PAGA claim) was dismissed on April 4, 2024 after the parties settled his individual claim.  (4/10/25 Setareh Decl. ¶ 7.)

On April 4, 2022, the parties attended a mediation.  (4/10/25 Setareh Decl. ¶ 8.)  Following two years of post-mediation negotiations, the parties entered into a Settlement Agreement to resolve the non-individual PAGA claims.  (4/10/25 Setareh Decl. ¶ 8.)  The Settlement Agreement covers all non-exempt employees who worked in hourly positions in California from October 17, 2017 through the date of approval, or approximately 10,000 individuals.  (4/10/25 Setareh Decl. ¶ 37, Exh. 1 ("Settlement Agreement") at 3.)  The Settlement Agreement would release Defendant from all PAGA claims based on the facts and theories advanced in this litigation in exchange for a

2

1  Total Settlement Amount of $720,080.00.  (Pl.'s Mot. for Approval at 1; Settlement Agreement at
2  5.)  From the Total Settlement Amount, Plaintiff's counsel may seek: (1) third-party settlement
3  administration fees, (2) attorney's fees of 33% ($240,026.67), (3) costs of up to $12,000, and (4) a
4  service award of $10,000 for Plaintiff.  (Settlement Agreement at 5.)  This leaves a Net Settlement
5  Amount of $438,643.33.

On April 10, 2025, Plaintiff filed the instant motion for approval of the PAGA settlement.
On April 17, 2025, Plaintiff filed a motion for attorney's fees, costs, administrative costs, and a
service award.  On May 27, 2025, the Court requested supplemental briefing.  (Dkt. No. 76.)  On
June 10, 2025, Plaintiff filed his supplemental brief.  (Pl.'s Supp. Br., Dkt. No. 77.)  That same
day, counsel in another pending PAGA claim proceeding in state court filed a statement objecting
to the proposed settlement.  (Obj., Dkt. No. 78.)

## II.  LEGAL STANDARD

"An employee bringing a PAGA action does so as the proxy or agent of the state's labor law enforcement agencies, . . . who are the real parties in interest."  *Sakkab v. Luxottica Retail N. Am. Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (internal citations omitted).  "Because a PAGA action is brought as a proxy for law enforcement agencies, there is no requirement that the Court certify a PAGA claim for representative treatment like in Rule 23."  *Delgado v. Marketsource, Inc.*, Case No. 17-cv-7370-LHK, 2019 U.S. Dist. LEXIS 146968, at *8 (N.D. Cal. Aug. 28, 2019) (internal quotation omitted).  PAGA, however, requires that the court "review and approve any settlement of any civil action filed pursuant to [PAGA]."  Cal. Labor Code § 2699(l)(2).  Additionally, "[a] party seeking approval of a PAGA settlement must simultaneously submit the proposed settlement to the LWDA to allow the LWDA to comment on the settlement if the LWDA so desires."  *Delgado*, 2019 U.S. Dist. LEXIS 146968, at *8-9.

In evaluating a PAGA settlement, "neither the California legislature, nor the California Supreme Court, nor the California Courts of Appeal, nor the LWDA has provided any definitive answer as to what the appropriate standard is for approval of a PAGA settlement."  *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019) (internal quotations omitted).  In *O'Connor v. Uber Techs., Inc.*, the LWDA offered the following guidance:

3

> It is thus important that when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.

201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016). "In line with these general principles, a number of district courts have applied a Rule 23-like standard, asking whether the settlement of the PAGA claims is fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes." *Haralson*, 383 F. Supp. 3d at 972.

### III.   DISCUSSION

#### A.   Fairness of the Proposed Settlement

"Given the lack of an express standard, several courts . . . have applied several of the factors in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), to evaluate a PAGA settlement. *Delgado*, 2019 U.S. Dist. LEXIS 146968; *see also Patel v. Nike Retail Servs.*, Case No. 14-cv-4781-RS, 2019 U.S. Dist. LEXIS 77988, at *5 (N.D. Cal. May 8, 2019), *O'Connor*, 201 F. Supp. 3d at 1134. The relevant *Hanlon* factors are: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of the proceedings; (5) the presence of government participation; and (6) the expertise and views of counsel." *Patel*, 2019 U.S. Dist. LEXIS 77988, at *6.

#### i.   Strength of Plaintiff's Case

"In general, legal uncertainty favors approval of a settlement." *Patel*, 2019 U.S. Dist. LEXIS 77988, at *7. Here, Plaintiff identifies a number of risks to demonstrating liability in this case. For example, with respect to travel time, Plaintiff notes that Wage Order 4 interprets the term "hours worked" in accordance with the Fair Labor Standards Act ("FLSA"). (Pl.'s Supp. Br. at 6.) The FLSA, in turn, provides that travel to and from "the actual place of performance of the principal activity or activities which such employee is employed to perform" is not compensable time. 29 U.S.C. § 254. This creates a legal question of whether the time spent traveling between the hotel and the hospital is compensable. Additionally, Plaintiff observes that travel time is

4

compensable where an employer requires its workers to use company-provided transportation. (*See id.* (citing *Overton v. Walt Disney Co.*, 136 Cal. App. 4th 263, 271 (2006) ("employers may provide optional free transportation to employees without having to pay them for their travel time, as long as employers do not require employees to use this transportation")).) Plaintiff, however, states that Defendant produced a document electronically signed by Plaintiff, indicating that "he understood he was free to arrange his own travel, and was *not* required to use Defendant's transportation." (Pl.'s Supp. Br. at 7; 6/10/25 Setareh Decl. ¶ 6, Dkt. No. 77-1.)

With respect to the meal and rest breaks, Plaintiff notes that Defendant has argued that an individualized inquiry would be required to determine why some employees missed meal and rest breaks. (Pl.'s Mot. to Approve at 5.) Similarly, given the lack of a policy requiring employees to use their personal cell phones, there was a question of whether Plaintiff would have been able to establish that employees were entitled to reimbursement for the use of their personal cell phones. (Pl.'s Supp. Br. at 7-8.) Finally, Plaintiff notes that Defendant's alleged failure to pay bonuses and to compensate for training modules would have affected a limited number of pay periods. (*Id.* at 7.)

Additionally, even if Plaintiff prevailed on the merits, Plaintiff would not necessarily recover all of the civil penalties sought. The Court can reduce the penalties when "to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(e)(2); *see also Patel*, 2019 U.S. Dist. LEXIS 77988, at *8.

Given the uncertainties of recovery and the possibility that the civil penalties sought would be reduced, the Court finds this factor favors approving the settlement.

### ii. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

In addition to the risks identified above, Plaintiff would have faced the typical costs of further litigation, as well as the risks caused by the changing PAGA landscape and the likelihood of appeals. (Pl.'s Supp. Br. at 10.) The Court finds that this factor favors approving the settlement.

### iii. The Amount Offered in Settlement

Here, the Total Settlement Amount is $720,080. PAGA permits an aggrieved employee to

recover a civil penalty of $100 per pay period for an initial violation. Cal. Lab. Code § 2699(f)(2). Here, there are approximately 10,000 employees, who worked approximately 45,005 weekly pay periods. (Pl.'s Mot. for Approval at 2, 6.)

In their motion, Plaintiff asserted that the "total realistic exposure" was $1,125,100, such that the Total Settlement Amount represented 64% of the total realistic exposure. (Pl.'s Mot. for Approval at 14.) This, however, was based on the pay periods being reduced to 11,251 after a 50% reduction for Defendant's good faith defenses and a further 50% reduction under Labor Code § 2699(o) to account for the fact that Defendant paid workers on a weekly basis. (*Id.*) Plaintiff also assumed no "stacking," *i.e.*, the award of separate PAGA penalties for each type of labor violation in a single pay period, as well as no civil penalty of $200 per pay period for a subsequent violation. (*Id.* at 5-6.) In its order requiring supplemental briefing, the Court required Plaintiff to address these assumptions, pointing out that some courts do permit stacking, that § 2699(o) appeared to apply to cases filed after June 2024, and that Plaintiff had failed to address the risks as to the merits of claims other than meal and rest breaks. (Dkt. No. 76 at 2-3.)

In the supplemental brief, Plaintiff addressed the additional risks as to the merits of the case as discussed above. (Pl.'s Supp. Br. at 6-8.) Plaintiff further explained that the $200 penalty would likely not be applied because the enhanced penalty for subsequent violations usually required notice to the employer. (*Id.* at 5.) Plaintiff also acknowledged that § 2699(o) would not be mandatory. (*Id.* at 5-6.) Finally, Plaintiff estimated that the maximum amount of civil penalties if there was stacking would be $28,353,050, such that the Total Settlement Amount would amount to only 2.54% of the maximum potential recovery. (*Id.* at 3-4; 6/10/25 Setareh Decl. ¶ 4.)

The Court finds that this factor ultimately favors approving the settlement. While 2.54% of the maximum potential recovery is low, there is legal uncertainty as to whether stacking is permitted. *See Smith v. Lux Retail N. Am., Inc.*, Case No. 13-cv-1579-WHA, 2013 U.S. Dist. LEXIS 83562, at *9 (N.D. Cal. June 13, 2013) (raising doubts "that we would really pile one penalty on another for a single substantive wrong"). Moreover, even if stacking was permitted, the Court could still reduce the penalties awarded per § 2699(e)(2), particularly if the penalties

1   were significantly greater than Plaintiffs' actual damages. Thus, assuming no stacking and $100

2   per pay period penalty, a more likely potential recovery would be $4,500,500 (45,005 Pay Periods

3   x $100). The Total Settlement Amount, in turn, amounts to 16% of this likely potential recovery.

4   While not nearly as "excellent" as Plaintiff suggests (*see* Pl.'s Mot. for Attorney's Fees at 1), this

5   is not an unreasonable recovery given the legal uncertainties identified above. Indeed, courts have

6   approved significantly lower PAGA settlements. *See Ramirez v. Benito Valley Farms, LLC*, No.

7   16-CV-04708-LHK, 2017 U.S. Dist. LEXIS 137272, at *14 (N.D. Cal. Aug. 25, 2017) (approving

8   PAGA settlement that amounted to 4.5% of the total estimated possible recovery). The Court also

9   notes that this is not a case where the PAGA claim is being settled with class claims, resulting in

10  the PAGA claim being "used merely as a bargaining chip, wherein the rights of individuals who

11  may not even be members of the class and the public may be waived for little additional

12  consideration in order to induce the employer to agree to a settlement with the class." *O'Connor*,

13  201 F. Supp. 3d at 1134. Instead, real value is being placed on the PAGA claim itself.

### iv. The Extent of Discovery Completed

The settlement was entered into after the parties engaged in substantial discovery, with Defendant providing company documents and records, data, and written policies reflecting and relating to time worked, rates of pay, workweeks, wages paid, and meal and rest break premiums paid. (4/10/25 Setareh Decl. ¶ 12.) Thus, the parties appear to have a well-developed sense of the risks of continued litigation. Accordingly, the Court finds that this factor favors approving the settlement.

### v. Presence of Government Participation

As required by statute, Plaintiff submitted the settlement to the LWDA concurrent with the filing of the motion for approval. (4/10/25 Setareh Decl. ¶ 38.) In Plaintiff's supplemental brief, Plaintiff stated that the LWDA had not responded. (Pl.'s Supp. Br. at 9.) At the hearing, Plaintiff confirmed that the LWDA had still not responded. The Court finds that this factor favors approval, as the LWDA has been given an opportunity to comment on the settlement but has not raised any objections.

####        vi.    Expertise and Views of Counsel

Here, Plaintiff was represented by competent and experienced counsel, with significant experience in class action and employment litigation. (4/10/25 Setareh Decl. ¶¶ 29-30.) Based on this experience, Plaintiff's counsel believes that the settlement "[is] in the best interest of Plaintiff and the aggrieved employees and [is] fair and reasonable." (4/10/25 Setareh Decl. ¶ 16.) The Court concludes that this factor favors approval.

####        vii.   Conclusion

Having considered the relevant *Hanlon* factors, the Court finds that the settlement of the PAGA claim is fair and reasonable and promotes the goals of PAGA. In so finding, the Court acknowledges that there has been an objection filed, complaining that on average, aggrieved employees will receive only $10.96 per individual. (Obj. at 4.) While true, this ignores that PAGA requires that the bulk of civil penalties bet distributed to the LWDA, not the aggrieved employees who retain their right to sue on their individual claims. *See Kang v. Wells Fargo Bank, N.A.*, No. 17-cv-06220-BLF, 2021 U.S. Dist. LEXIS 235254, at *46 (N.D. Cal. Dec. 8, 2021) ("The statute requires that 75% of civil penalties recovered be allocated to the LWDA and 25% be allocated to aggrieved employees."). Thus, while individual employees will receive an estimated $10.96, this minimizes the fact that Defendant is also paying the bulk of the penalties to the LWDA. In short, the sole fact that the average employee recovery is around $10 is not a ground for finding that the settlement itself is not fair or reasonable.

Therefore, the Court GRANTS Plaintiff's motion for approval of the settlement of the PAGA claims.

### B. Attorney's Fees and Costs

Per PAGA, "[a]ny employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." Cal. Labor Code § 2699(g)(1). "PAGA does not provide a specific standard for evaluating attorney's fees in connection with a PAGA settlement. However, the lodestar method is a well-established method for determining the reasonableness of an attorney's fee award." *Delgado*, 2019 U.S. Dist. LEXIS 146968, at *16. Other courts have applied the "percentage method." *See Abelar v. Am. Residential Servs., L.L.C.*, ED CV19-726-

8

JAK (JPRx), 2019 U.S. Dist. LEXIS 198772, at *13 (C.D. Cal. Nov. 14, 2019).

Here, Plaintiff's counsel seeks one-third of the Total Settlement Amount for attorney's fees, or $240,026.67. (Pl.'s Mot. for Attorney's Fees at 2.) This represents a 1.49 multiplier. (*Id.*)

The Ninth Circuit typically applies a "benchmark award" of 25%, although "many awards that deviate from the benchmark are approved." *Abelar*, 2019 U.S. Dist. LEXIS 198772, at *14; *see also id.* at *14-15 (awarding attorney's fee award of one-third of the gross settlement amount). The Court, however, does not find that this is a case that warrants such an upward adjustment, especially when a 25% benchmark award (or $180,020) still compensates Plaintiff's counsel for the time spent on this case. (*See* 4/16/25 Setareh Decl. ¶ 15, Dkt. No. 74-1 (asserting lodestar of $164,157.50).) As discussed above, this was not a case with exceptional results. Rather, even assuming only a single penalty per pay period and no enhanced $200 penalty for subsequent violations, the Total Settlement Amount is approximately 16% of the likely recovery.

Further, this is not a case where other factors warrant an upward adjustment from the benchmark award. Plaintiff's counsel admits this was not a case of the highest complexity. (Pl.'s Mot. for Attorney's Fees at 14.) The Court also notes that as to litigation of the case before the Court, Plaintiff's substantive motions were largely denied. (*See* Dkt. Nos. 27 (denying Plaintiff's motion to remand and granting Defendant's motion to compel arbitration), 36 (denying Plaintiff's motion to amend complaint), 39 (denying Plaintiff's motion for leave to file motion for reconsideration and noting the lack of legal authority supporting Plaintiff's position); *contrast with Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 982 (E.D. Cal. 2012) (noting that the quality of representation favored an increase in the fee award where the "plaintiffs prevailed in nearly every motion").) Plaintiff's counsel points to the changing case law that required adjustments to the case strategy, but does not explain what changes were required. (Pl.'s Supp. Br. at 10.) In any case, any additional time required to account for the changing case law is reflected in the lodestar, and does not itself warrant a multiplier of Plaintiff's fees or a deviation from the benchmark award. Finally, the risk of nonpayment alone does not warrant an upward adjustment, particularly where Plaintiff's counsel has made no showing that "the risks exceeded those ordinarily faced by counsel who take cases on contingency." *Id.* at 983; *see also Smith v. A-*

9

*Check Am. Inc.*, EDCV 16-00174-VAP (KKx) (C.D. Cal. July 18, 2017) ("The Ninth Circuit has suggested the distinction between a contingency arrangement and a fixed fee arrangement alone does not merit an enhancement from the benchmark.") Accordingly, the Court finds that given the totality of the circumstances, a departure from the 25% benchmark is not warranted. Instead, the Court will award 25% of the Total Settlement Amount, *i.e.*, $180,020 in attorney's fees.

As to costs, Plaintiffs' counsel seeks an adjusted total of $9,955.93 in costs. (Pl.'s Supp. Br. at 11.) The costs include legal research, mediation costs, expert costs, travel costs, and filing fees. (4/16/25 Setareh Decl., Exh. A.) The costs are reasonable and necessary. Accordingly, the costs request of $9,955.93 is approved.

### C. Administration Costs

Plaintiff seeks $19,410 in administrative costs. (Pl.'s Mot. for Attorney's Fees at 20.) Plaintiff has provided a declaration by Simpluris, stating their qualifications and duties. (*See* Islas Decl., Dkt. No. 70-2.) Simpluris states that the costs to administrator the case are $24,410 based on disbursement to 10,000 individuals, but that they have offered a client courtesy discount such that the administrative costs will be $19,410. (Islas Decl. ¶ 9.) The Court finds the proposal reasonable, and approves administrative costs of $19,410.

### D. Service Award

Finally, Plaintiff seeks a service award of $10,000. (Pl.'s Mot. for Attorney's Fees at 19.) Plaintiff asserts that he has spent at least 50 hours of time in connection with this case. (Marron Decl. ¶ 9, Dkt. No. 74-2.) Plaintiff's work included obtaining legal counsel, assisting in gathering information and contact information, discussing his damages with Plaintiff's expert, and participating in a full-day mediation. (Marron Decl. ¶ 9.)

Courts in this district have typically found that a service award of $5,000 is a presumptively reasonable amount, such that there must be a showing justifying an award beyond this amount. *See Hamilton v. Juul Labs, Inc.*, No. 20-cv-03710-EMC, 2021 U.S. Dist. LEXIS 221416, at *40-41 (N.D. Cal. Nov. 16, 2021) (applying $5,000 presumptive service award to PAGA settlement). Thus, courts have found that an award of "even $10,000 is considered quite high." *Rollins v. Dignity Health*, No. 13-cv-01450-JST, 2022 U.S. Dist. LEXIS 243289, at *26-27

(N.D. Cal. July 15, 2022).

The Court finds that $5,000 -- a $100 hourly rate – is sufficient to compensate for work performed and to make up for financial or reputational risks undertaken in bringing an action. Courts have typically found that hourly rates of $50-100 is sufficient in similar cases. *See Kov. Natura Pet Products, Inc.*, 2012 U.S. Dist. LEXIS 128615, at *44-45 (N.D. Cal. Sept. 10, 2012) (reducing requested $20,000 service award to $5,000, and noting that the plaintiff "will still be compensated handsomely for her time; the $5,000 award results in either a $100 or $50 hourly rate for the 50-100 hours Plaintiff expended on this case"); *Vikram v. First Student Mgmt., LLC*, No. 17-cv-04656-KAW, 2019 U.S. Dist. LEXIS 149910, at *17 (N.D. Cal. Sep. 3, 2019) (reducing requested $10,000 service award to $5,000, and noting that a $50 hourly rate was "sufficient to compensate for work performed and to make up for financial or reputational risks undertaken in bringing an action"). An upward adjustment is not warranted in this case; this is not a case where Plaintiff performed significantly more work than is typically required, or where Plaintiff faces greater than normal reputational risks. *Contrast with Rollins*, 2022 U.S. Dist. LEXIS 243289, at *27-28 (awarding $10,000 service award to a plaintiff who spent a few hours per month on the case every year for nine years). The Court also observes that this $5,000 amount is also in addition to Plaintiff's separate settlement of his individual claims; thus, this is already not a typical case where the service award also accounts for Plaintiff agreeing to a broader release of claims than other individuals.

Thus, the Court approves a $5,000 service award.

## IV.   CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's motion to approve the PAGA settlement. The Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for attorney's fees: specifically, the Court awards $180,020 in attorney's fees, $9,955.93 in costs, $19,410 in administration costs, and $5,000 service award to Plaintiff. Per the Settlement Agreement, the unawarded amounts of attorney's fees, costs, and service award shall become part of the Net Settlement Amount that will be distributed to the LWDA and individual employees. (*See* Settlement Agreement at 5-6.)

1   The parties shall file a status report, stipulated proposed judgment, or dismissal of the case
2 within 60 days of the date of this order.
3 IT IS SO ORDERED. Dated:
4 August 11, 2025

*[signature: Kandis Westmore]*
KANDIS A. WESTMORE
United States Magistrate Judge